UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THOMAS CLIMER and TODD DEWULF,

      Plaintiffs,

v.                                                                Case No. 08-11074

WARREN POLICE OFFICER                    HON. AVERN COHN
MATTHEW DILLENBECK and
WARREN POLICE OFFICER DWAYNE
SALISBURY,

      Defendants.

_____/

## MEMORANDUM AND ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
## SUMMARY JUDGMENT

I. Introduction

This is a case under 42 U.S.C. § 1983.  Plaintiffs Thomas Climer and Todd

DeWulf are suing defendants, Warren police officers Matthew Dillenbeck and Dwayne

Salisbury[1] making claims under state and federal law stemming from a traffic stop.

Specifically, plaintiffs claim (1) assault and battery, (2) false imprisonment, (3) false

arrest, (4) malicious prosecution, and (5) violation of § 1983.  All of plaintiffs' claims,

with the exception of assault and battery, are based on the allegation that defendants

lacked probable cause for the initial traffic stop.

Before the Court is defendants' motion for summary judgment.  For the reasons

_____

[1]Plaintiffs also originally sued Warren police officers Keith Vanderkhove, Louis
Burch, Nichols, and Michael Torey.  They have been dismissed by stipulation.

that follow, the motion will be denied in part and granted in part.  Plaintiffs' claims for

false imprisonment, false arrest, malicious prosecution, and violation of § 1983 will

continue.  Plaintiffs' claims for assault and battery will be dismissed.

II.  Background

The material facts, viewed in a light most favorable to plaintiffs, and gleaned from

the record, consisting of the parties' deposition testimony, and the parties' papers

follow.[2]

On April 12, 2007, DeWulf was living with a friend on Rivard Street in the City of

Warren.  Climer was at the home visiting the friend.  At approximately 11:30 pm that

night, Climer and Dewulf left the home in Climer's 1992 Plymouth Grand Voyager

minivan to make a short drive to a party store located on Eight Mile and Van Dyke in

Detroit to purchase beer to DeWulf.  Climer admits he consumed two glasses of wine

earlier that evening and DeWulf admits smoking marijuana approximately one hour

before leaving for the party store.

As they left the party store, they headed north on Van Dyke and crossed Eight

Mile, entering back into Warren.  At this point, they passed a squad car stopped at a

stop light at the intersection of Eight Mile and Van Dyke with defendant officers inside.

Defendants were located on Eight Mile facing westbound.

_____

[2]Neither party complied with the Court's motion practice guidelines for a motion
for summary judgment.  Although defendants filed a statement of undisputed facts in
separately numbers paragraphs, plaintiff did not respond paragraph by paragraph, and
instead denied all of the facts except for those in three paragraphs.  Neither party
highlighted their exhibits.  The Court directed the parties at the hearing to supplement
their papers to correct these deficiencies.  Defendants have resubmitted their motion
with appropriate highlights.  Plaintiffs have filed a response to defendants' statement of
undisputed facts and counter-statement of facts.

At this point, the parties' version of the events differs.  Dewulf says that as soon as the minivan passed the squad car at the intersection, he moved a small baggie of marijuana from inside his pocket and stuffed it down pants.  DeWulf says he did not alert Climer to the fact that he saw a squad car.

The defendants say that as the minivan crossed the intersection at Eight Mile and Van Dyke, they believed the windows were tinted in excess of the legal limit. Dillenbeck says that he could not see inside the minivan as it crossed the intersection in front of the squad car.  Salisbury says that he noticed the front passenger window was tinted.  Defendants then turned onto Van Dyke from Eight Mile to follow plaintiffs and observed Climer made an immediate turn onto the first street after the intersection, Rivard Street.  Defendant Dillenbeck characterizes the turn as "abrupt;" Climer denies making an abrupt turn and says that he turned on Rivard Street to return to his friend's house.  Defendants also say that they believed the turn was "suspicious" and followed plaintiffs and activated their emergency lights on Rivard street.  Defendants say that Climer continued driving on Rivard for nearly a block before stopping.  Climer, however, says that he did not notice the squad car until he had turned onto Rivard and that he drove for approximately ½ block before stopping because he did not realize the defendants were pulling him over; he thought they were going to pass him.

Once stopped, Dillenbeck approached the minivan and says that he could see clearly into the minivan because the driver window was rolled down.  He further says that he saw Climer place something under the overhead visor and he saw DeWulf stuff something down his pants.  Climer denies this and testified he placed some marijuana under the visor before leaving for the party store.  As noted above, DeWulf says that he

3

stuffed marijuana down his pants but that was when he first saw the squad car when both vehicles were still on the road.

Dillenbeck instructed Salisbury to approach on the passenger side.  At some point, he informed Salisbury that safety was a concern because of DeWulf's gesture of stuffing something into his pants.  Salisbury removed Dewulf from the minivan and conducted a weapons pat down search.  The pat down revealed that DeWulf had a small baggie of marijuana stuffed in his pants.  Salisbury arrested DeWulf for possession of marijuana and placed him in the back of the squad car.

Meanwhile, Climer asked Dillenbeck why he was being stopped.  Climer says that Dillenbeck told him he was being stopped because "his friend was acting suspicious" and because he had a non-working taillight.  Dillenbeck removed Climer from the minivan and conducted a pat down search.

After removing Climer, Dillenbeck noticed the smell of intoxicants on Climer and asked whether he had been drinking.  Climer admitted to having a couple of drinks. Salisbury administered a sobriety test.  Climer passed the alphabet test but according to the police report, he failed counting backwards by twos from 39-21 and failed balance tests.  Climer says that he believed he did the counting correctly and that he had a bad back with contributed to his inability to stand on one leg.  Climer voluntarily submitted to a PBT test, which resulted in a .006, within the legal limit.

Meanwhile, Dillenbeck searched the minivan and found a small amount of marijuana under the driver's side visor.  Climer admitted the marijuana was his. Dillenbeck did not ask for Climer's permission to search the minivan.  Dillenbeck arrested Climer for possession of marijuana and placed him in the back of the squad

4

car.

Plaintiffs were charged with possession of marijuana.  The charges, however, were eventually dropped.  It is not clear from the record whether the prosecutor dropped the charges or whether a judge dismissed them on plaintiffs' motion.  Cilmer testified that a judge threw the case out based on an illegal search.  Salisbury says that the "city attorney for some unknown reason . . . threw out our probable cause for the stop and the judge dismissed the case . . . ."  Salisbury dep. at p. 43.

Dillenbeck and Salisbury maintain that the only reason for the traffic stop was the tinted windows.  No citation was issued for tinted windows.

### III.  Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for

5

summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8

F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, and

significantly, "affidavits containing mere conclusions have no probative value" in

summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir.

1968).  Determining credibility, weighing evidence, and drawing reasonable inferences

are left to the trier of fact.  See Anderson, 477 U.S. at 255.  Only where there are no

genuine issues of material fact and the moving party is entitled to judgment as a matter

of law may summary judgment be granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th

Cir. 2001).

IV.  Analysis

A.  Plaintiff's Claims for False Arrest, False Imprisonment, Malicious Prosecution and
violation of § 1983

1.  Whether there was probable cause for the initial traffic stop

Defendants argue that summary judgment is proper on plaintiffs' claims of false

arrest, false imprisonment, malicious prosecution, and violation of § 1983 because

probable cause existed for the initial traffic stop.

A police officer must have probable cause to stop a vehicle for a civil traffic

offense, such as operating a vehicle with excessively reflective window tint.  See Whren

v. United States, 517 U.S. 806, 810 (1996)(emphasis added) ("As a general matter, the

decision to stop an automobile is reasonable where the police have probable cause to

believe that a traffic violation has occurred.").  The Sixth Circuit has held that, "so long

as [an] officer has probable cause to believe that a traffic violation has occurred or was

occurring, the resulting stop is not unlawful and does not violate the Fourth

6

Amendment." United States v. Ferguson, 8 F.3d 385, 391 (6th Cir. 1991) (en banc) (citation omitted). Additionally, an officer may detain the vehicle or its occupants only so far as consistent with the basis for the stop, "unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." United States v. Bailey, 302 F.3d 652, 657-658 (6th Cir. 2002) (citations omitted). See also United States v. Freeman, 209 F.3d 464, 466 (6th Cir. 2000) (invalidating a traffic stop where the police lacked probable cause to stop the defendant's vehicle for violating a traffic rule requiring motorists to operate their vehicles within a single lane).

Probable cause exists where the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).

> The Supreme Court has made clear that there is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account the "factual and practical considerations of everyday life" that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur.

United States v. Strickland, 144 F.3d 412, 415 (6th Cir. 1998) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)).

Thus, because defendants seek to justify stopping plaintiffs based on the grounds that the minivan's windows were illegally tinted, defendants must have had probable cause at the time of the stop to believe that the windows were not in compliance with the statute.

Here, defendants testified that the only basis for the stop was the allegedly illegal

7

tinted windows which they observed when the minivan passed them on the road.[3] Plaintiffs say that this basis is flawed because (1) plaintiffs were driving legally and not violating any laws, (2) defendants never inspected the windows after the stop to determine if they were tinted.

The Court is constrained to find that there is a genuine issue of material fact as to whether probable cause existed to stop the minivan based on illegally tinted windows. First, it was 11:30pm at night which sheds some doubt on the defendants' ability to see whether the windows were tinted illegally, particularly when defendants said they noticed the excessive tint while the minivan passed by defendants on the road. Second, both defendants testified that after stopping the minivan, they did not inspect the windows to determine whether they were illegally tinted.  Third, neither defendant informed plaintiffs that they were stopped because of excessive window tint.  Fourth, Dillenbeck says that he does not know what level of tint is required to violate the law;[4] but rather says that if he cannot see inside a vehicle that constitutes tinted windows.

---

[3]In their brief, defendants point to additional "factors" which lead to the stop, including that the minivan made an "abrupt" turn onto the first street after crossing the intersection and did not stop immediately when defendants activated their lights. However, defendants did not testify to these facts as a basis for the initial stop.

[4]Under Michigan law --

(1) A person shall not drive a motor vehicle with any of the following:

(b) A rear window or side window to the rear of the driver composed of, covered by, or treated with a material that creates a total solar reflectance of 35% or more in the visible light range, including a silver or gold reflective film.

Mich. Comp. Laws § 257.709(1)(b).

8

Finally, Climer was never issued a citation for illegally tinted windows.[5]  Viewing the facts in the light most favorable to plaintiffs, it cannot be said as a matter of law that the defendants had probable cause to stop the minivan for illegally tinted widows.  Thus, summary judgment is not appropriate on this ground.

Defendants, however, cite <u>Shahit v. City of Detroit</u>, No. 04-71538, 2005 WL 1345413 (E.D. Mich. June 1, 2005) (unpublished).  <u>Shahit</u> involved the alleged unlawful arrest and detainment of two Arab-American men by the City of Detroit police officers. Plaintiffs sued under §1983.  One of the basis for the stop was the defendant officers' belief that the car in which plaintiffs were driving had illegally tinted windows.  The other basis was plaintiffs' "peculiar" use of a camcorder near the Ambassador Bridge. Defendants filed a motion for summary judgment, contending in part that the stop was valid based in part on probable cause to believe the windows were illegally tinted. Defendants argued that the weather conditions made it appear like the windows were excessively tinted.  Plaintiffs conceded that the windows were tinted, but were tinted well-below the legal limit.  The district court agreed that probable cause existed and the defendants were entitled to qualified immunity on this ground.  The district court explained:

> As noted above, Plaintiffs allege that the Cadillac's windows had a solar reflectance of 7 percent. Plaintiffs also make much of the fact that 7 percent is much lower than the 35 percent prohibited by statute.  Defendants, however, need not make a precise assessment in order to stop the vehicle; they need only "a particularized and objective basis for suspecting the particular person stopped

---

[5]Plaintiffs have attached as an exhibit a photograph of the minivan and computer print out which they say show that the windows of the minivan are not illegally tinted. While that may be true, the focus is not on whether the windows are illegally tinted, but rather whether the defendants has probable cause to believe they were.

of criminal activity." <u>United States v. Cortez</u>, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621, (1981).  Furthermore, although Plaintiffs argue that the overcast weather conditions limited Defendants' ability to see any reflection off the Cadillac's windows, the squad-car videotape reveals that the conditions were ripe for causing the windows to appear reflective.  For instance, the rain caused the road to be highly reflective as evidenced by the reflection of the Cadillac's brake lights in the road. Thus, Plaintiffs contention that Defendants' testimony should be discounted because of the weather conditions is unpersuasive. Therefore, the Court finds that Defendants' affidavits, Plaintiffs' admission that the Cadillac's tinted windows are reflective though technically legal, and the squad-car videotape, all demonstrate that Defendants have articulated "more than an inchoate and unparticularized suspicion or hunch of criminal activity." <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123-24, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).

Shahit, 2005 WL at * 10.

Contrary to defendants' argument, <u>Shahit</u> is not controlling but rather distinguishable.  In <u>Shahit</u>, there was videotape evidence from which the Court could discern that the windows appeared tinted which bolstered the officers' testimony as to the reflective nature of the windows.  Moreover, the plaintiffs in <u>Shahit</u> were specifically questioned about and cited for illegally tinted windows at the time of the stop.  Finally, plaintiffs were stopped not only for the tinted windows, but also for what defendants believed to be suspicious use of a camcorder.  <u>Shahit</u> does not stand for the broad proposition that anytime a defendant officer believes a windows are tinted, that probable cause exists for a stop.

2.  Whether there was probable cause to arrest plaintiffs for possession of marijuana

Defendants also argue that summary judgment is appropriate on plaintiffs claims for false arrest, false imprisonment, malicious prosecution, and § 1983 still fail because probable cause existed to arrest plaintiffs for possession of marijuana.

As an initial matter, defendants cite <u>People v. Lambert</u>, 174 Mich. App. 610

10

(1989) for the proposition that even if the traffic stop was not supported by probable cause, plaintiffs claims for false arrest, false imprisonment, malicious prosecution, and § 1983 still fail because probable cause existed for the arrest.  In <u>Lambert</u>, the Michigan Court of Appeals considered whether evidence obtained after an illegal traffic stop was nevertheless admissible as an exception to the exclusionary rule because the evidence was obtained independently, and not from exploiting, the traffic stop.  The court of appeals explained:

> We conclude from the authorities cited above that where the police have unlawfully stopped or detained a citizen and then discover that the person detained is the proper subject of a lawful arrest on grounds other than the original illegal stop, the police may make the arrest and any evidence obtained as a result of the lawful arrest is admissible.

<u>Lambert</u>, 174 Mich. App. at 618.

  <u>Lambert</u> was a criminal case dealing with the exclusionary rule.  It is not clear the extent to which the court of appeals' holding carries over into a civil action claiming false arrest.  What <u>Lambert</u> does show is that the events leading to an initial traffic stop and the events leading to an arrest may be based on entirely different sets of facts and can be separately evaluated.  That is the case here.  Plaintiffs were stopped because the minivan's allegedly illegally tinted windows.  Plaintiffs were arrested because defendants' found marijuana.  Thus, it is appropriate to independently consider whether probable cause existed to arrest plaintiffs for possession of marijuana.  If there was, then plaintiffs' claims fail.

  It is clear that plaintiffs' claims under § 1983, false arrest, and false imprisonment all require plaintiffs to show defendants acted without probable cause.  A claim asserting the Fourth Amendment right against false arrest under § 1983 hinges on

whether the arresting officer had probable cause to arrest the plaintiff.  Fridley v. Horrighs, 291 F.3d 867, 872 (6th Cir. 2002) (citing Painter v. Robertson, 185 F.3d 557, 569 (6th Cir.1999)).  Moreover, the Sixth Circuit has held that alleging prosecution based upon an officer's having "fabricated evidence and manufactured probable cause" is sufficient to state a claim of malicious prosecution under the Fourth Amendment.  See Spurlock v. Satterfield, 167 F.3d 995, 1005-06 (6th Cir. 1999).  Likewise, "[u]nder Michigan law, a plaintiff must demonstrate the absence of probable cause [to arrest] to prevail in claims of malicious prosecution, false arrest, or false imprisonment."  Bell v. Raby, 2000 WL 356354, *8, n. 13 (E.D. Mich. 2000), citing, Moore v. Michigan Nat'l Bank, 368 Mich. 71 (1962); Blase v. Appicelli, 195 Mich. App. 174 (1992); Tope v. Howe, 179 Mich. App. 91 (1989).

     The events leading to plaintiffs arrest are as follows.  As to DeWulf, Dillenbeck testified that he directed Salisbury to remove DeWulf from the minivan and conduct a protective pat down for weapons because he saw DeWulf stuff something down his pants when he approached the minivan.  While conducting the pat down, Salisbury found a bulge in DeWulf's pants and asked DeWulf what it was; DeWulf admitted it was marijuana.  DeWulf, however, tells a different story.  He testified that he stuffed the marijuana down his pants when he and Cilmer first observed the squad car when they passed it on the road.  DeWulf says there was no way that Dillenbeck could have seen him at the time.  Given the factual dispute, the Court cannot say as a matter of law that Dillenbeck's testimony conclusively establishes probable cause to arrest DeWulf for possession of marijuana.

     As to Cilmer, Dillenbeck testified that he saw Cilmer place something in the

12

overhead visor when he approached the minivan.  Cilmer denies this and says that he placed the marijuana in the visor before leaving for the party store.  Again, this factual dispute precludes a determination on summary judgment that probable cause existed for arresting Cilmer on possession of marijuana.

Given this determination, defendants are not entitled to protection from qualified immunity[6] or governmental immunity.[7]

### B.  Plaintiffs' Claim for Assault and Battery

Defendants further argue that summary judgment is appropriate on plaintiffs' assault and battery claim because there is no evidence to support it.  The Court agrees. Plaintiffs' response states:

> Clearly, considering the deposition testimony of Plaintiffs and Defendants, there is clear evidence that force was used against both Plaintiffs during the arrest.
>      . . .
> Defendants acted unlawfully and offensively touched Plaintiffs during the course of the illegal search and arrest, handcuffed both of them and detained them.

Plaintiffs' brief at p. 12.  Plaintiffs, however, do not cite to the record in support of these statements and provide no elaboration.  The record shows nothing more than a typical arrest, which typically, if not always, includes the use of handcuffs.  It is clear that

---

[6]A police officer has qualified immunity from suit if the officer "arguably had probable cause" to arrest.  See Dier v. City of Prestonsburg, 480 F. Supp. 2d 929, 936 (E.D. Ky. 2007) (citing Jeffers v. Heavrin, 10 F.3d 380, 381 (6th Cir.1993)).

[7]Under Michigan's governmental immunity law, "a police officer, acting in good faith with probable cause within the scope of his authority, is not liable for false arrest or false imprisonment even though the arrest is subsequently found to be baseless." Blackman v. Cooper, 89 Mich. App. 639 (1979).

defendants have the right to use some degree of physical force in effectuating an arrest, including the use of handcuffs.  See Webb v. Warren, 168 F.3d 491 (6th Cir. 1998) (applying Michigan law).  Thus, defendants are entitled to summary judgment on this claim.

V.  Conclusion

For the reasons stated above, defendants' motion is DENIED IN PART AND GRANTED IN PART.  Plaintiffs' claims for false arrest, false imprisonment, malicious prosecution, and violation of § 1983 continue.  Plaintiffs' claim for assault and battery are DISMISSED.

SO ORDERED.


                                        s/Avern Cohn
                                        AVERN COHN
Dated: February 3, 2009                 UNITED STATES DISTRICT JUDGE
       Detroit, Michigan


14